HURON LODGE, NO. 444, B. P. O. E., Appellant, v. McNAMARA, Respondent.

(220 N. W. 468.)

(File No. 5799.   Opinion filed July 7, 1928.)

154

Null & Royhl, Crawford & Crawford, and Wilmarth, McCoy & McCoy, all of Huron, for Appellant.

Gardner & Churchill, of Huron, for Respondent.

POLLEY, J. This action is brought to recover on a promissory note. The court made findings of fact and conclusions of law favorable to defendant. Judgment was entered accordingly, and plaintiff appeals.

The facts appear to be as follows: During the year 1919 the plaintiff, the Elks Lodge at Huron, decided to erect a building to be used as a home for the lodge and a hotel. Not having sufficient funds to build such a building as was desired plaintiff decided to issue and sell bonds to be secured by a mortgage on the premises occupied by said building. Solicitors were sent out to secure subscriptions to a building fund. Subscriptions were in the form of promissory notes for which the subscribers were to receive interest-bearing bonds when the notes were paid. The amount of money that could be raised in this way was not known, and plans were not adopted, nor the size of the building decided upon, until after the subscriptions were made. In this way notes were secured aggregating $502,050. Plaintiff then proceeded with the construction of a seven-story building. One floor was devoted to the use of the lodge, the remainder of the building to hotel purposes. The building was opened for business on the 15th day of August, 1921; but up to the time of the trial of this action the seventh floor of the building had not been finished, part of the first floor was still unfinished, and the cornice had not been put on the building. Up to the time of the trial $539,265 had been expended on the building and its equipment. An issue of bonds to the extent of $650,000 had been authorized, of which $418,000 worth had been issued and delivered to the subscribers. The lodge itself donated $93,000, which was used in the construction of the building, but for which no bonds were issued.

Some time after the maturity of the note payment was requested. Defendant said it was not then convenient to pay it. He then offered to donate $500 to the building fund if he could have the note returned. This proposition was refused. He then offered to pay the note with a second mortgage on real estate; this was refused and this action commenced. In his answer defendant admitted the execution and delivery of the note, but as a defense thereto alleged want of consideration, and that the execution and delivery of the note were conditional; that the parties who solicited his subscription represented to him that the building that was to be erected should not cost more than $350,000; that plaintiff had on hand approximately $100,000 that would be donated, and that the bond issue would not exceed $250,000; that he subscribed for said bonds as an investment, and that in constructing a building that cost more than $350,000 and in issuing bonds in an amount in excess of $250,000 these conditions were broken, his investment was changed, and he was released from liability on the note.

It is true the note was delivered conditionally. It was not known before the subscriptions were taken whether funds sufficient to put up a building could be raised, or how large a building, if any, could be built; and so to the note was attached the following memorandum:

"It is understood that this note represents my subscription for gold certificate building bonds issued for the purpose of building and equipping an Elks building at Huron, South Dakota, and that in case a sufficient amount is not subscribed to permit construction of said building this note is to be returned intact and without cost to the signer, otherwise to be fully payable. . It is further understood that the explanation does not constitute a part of the note."

Touching upon this memorandum, the trial court in a purported finding of fact said it was unable to determine what the parties meant by said memorandum, and, over proper objection, permitted defendant to show by parol evidence that when he signed the note the party who solicited his subscription represented to him that plaintiff was going to construct a building to cost not more than $350,000; that plaintiff had approximately $100,000 that would be used; and that the balance of the cost would be paid by a sale of bonds not to exceed $250,000. The party procuring the subscription positively denied making any such representations. In

receiving this testimony the court wholly disregarded the conditions indorsed on the note and permitted the defendant to show by parol evidence entirely different conditions. When the conditions indorsed upon the note were reduced to writing they superseded all other negotiations that may have taken place between the parties. This is made so by express statute (section 860, Code 1919), and it was error for the court to permit defendant to show other and different conditions. Agreeing upon certain specific conditions which were indorsed in writing upon the note necessarily excluded all other conditions. By the conditions indorsed on the note the parties clearly meant that if sufficient funds could not be raised to warrant the plaintiff to proceed with the enterprise and erect a building, defendant was to have his note returned. But in case they did receive sufficient funds to warrant them in proceeding with a building (and of this fact plaintiff was to be the judge), then defendant was to be liable on the note.

■ As a further defense defendant claims that he received no consideration for the note at the time of its execution and delivery, and that the bond stipulated for at that time had not been delivered. Defendant is in no position to urge this defense. The record shows that a large number of other parties subscribed to the building fund by signing similar notes. The signing of these notes was a mutual inducement to each other to sign, and was the inducement that prompted the plaintiff to proceed with the building and the large expenditure of money therefor, and he should not, after others have paid their subscriptions and the building has been constructed, be heard to say that he had received no consideration.

■ At the trial building bonds issued by plaintiff to the extent of $5,000 in value were tendered to defendant on condition that he pay the amount due on the note. Such tender was refused by defendant on the ground, among others, that the bonds so tendered were not "gold" bonds such as had been stipulated for at the time of the execution and delivery of the note. Defendant, never having offered to pay the note, is in no position to urge this objection, but the objection is without merit and entitled to no consideration. A gold bond is one payable in gold coin or its equivalent, which means any mony that is acceptable to the United States government in payment of debts due the government. The bond tendered to the defendant is payable in such money.

Upon the record before this court, plaintiff was entitled to judgment.

The judgment and order appealed from are reversed.

SHERWOOD and BROWN, JJ., concur.

CAMPBELL, J. (dissenting). The agreement clause, explaining the note in question, as I understand it, was printed on the face of the note form below the space for signature. Assuming this explanatory clause to be in fact a written contract between the parties with reference to the note in question, I do not believe it had any higher rank or status than any other written contract. It is brief, fragmentary, unsigned, and, without parol explanation, to a very considerable extent meaningless. It does not purport in any manner to contain all representations made to, or relied upon, by the signer of the note, and it does not purport to contain the entire understanding and agreement of the parties with reference to the subject matter. Granting that this writing cannot be contradicted by parol, yet I do not see why it must not stand like any other written contract, and I do not see why representations and agreements, with reference to matters which do not purport to be covered by this fragmentary bit of writing, should not be shown by parol so far as they are material to the rights of the parties.

Furthermore, I think the writing in question is on its face so ambiguous as absolutely to demand explanation by parol to ascertain whether the minds of the parties met, and if so upon what. The writing says: "* * * A sufficient amount * * * to permit construction of said building. * * *" I challenge any one to point out from the writing itself what the parties actually understood by this phrase. Did they mean an amount which was sufficient in the opinion of the Elks Lodge, or in the opinion of defendant, or in the opinion of other note signers, or in the opinion of some architect, or did they mean to refer to some amount that had been discussed between them as being considered " a sufficient amount"? I do not know of any rule of law which permits this court arbitrarily to determine the meaning of these words, and refuse to listen to one of the parties who offers to show by parol that the parties discussed the subject and agreed upon the meaning.

Defendant was not a member of the Elks. He testified, and it is not contradicted, that he went into this as an investment prop-

osition. It appears that the completed project is costing something over $600,000; that the cash invested by the lodge is a little over $90,000; and the bond issue a little over half a million under a blanket trust deed authorizing bonds to the extent of $650,000. Defendant states that it was represented to him that the total cost of the project would be about $350,000 in which the Elks would put cash of $100,000, and against which they would issue bonds for $250,000. , I think this evidence was properly admissible, and the facts of the situation as they developed are certainly entirely different from the representations which defendant claims were made to him.

I think there are but two real questions in this case: First, whether the preponderance of the evidence is against the finding of the trial court that these representations were in fact made to, and relied upon, by defendant as he testifies; and, second, whether defendant by his subsequent conduct at the time he was called upon for payment of the note, or otherwise, has estopped himself from now pleading the defenses he sets up. The first question presents the matter of credibility of witnesses, and I am willing to be guided by the view of the trial judge who heard and saw them. I am therefore of the opinion that both these questions are properly to be answered in the negative, and for that reason think the judgment of the court below should be affirmed.

BURCH, P. J., concurs in dissent.